**Melvin Louis ROBERTS, Petitioner,**

v.

**The STATE OF OKLAHOMA et al., Respondents.**

**Civ. No. 75–0284–D.**

United States District Court, W. D. Oklahoma, Civil Division.

July 30, 1975.

Melvin Louis Roberts, pro se.

Larry Derryberry, Atty. Gen., Oklahoma City, Okl., for respondents.

## ORDER

DAUGHERTY, Chief Judge.

This is a proceeding for a writ of habeas corpus by a state prisoner who challenges the validity of the judgment and sentence of the District Court of Oklahoma County, Oklahoma, in Case No. CRF–71–2308. The respondents, pursuant to the Order of this Court to show cause, have filed a Response and submitted the original record including the transcript of petitioner's trial together with the records of the post-conviction proceedings in the state court.

From the Court's examination of these records it appears that the petitioner was charged with Rickey Leon Green and Eddie Dean Taylor with the offense of Robbery with Firearms. A joint trial was held on December 8, 9 and 10, 1971. The evidence established that Rex Moore, who was accompanied by his friend William Olson, was robbed when their vehicle stalled in the vicinity of N.E. 26th Street and Kelley Avenue in Oklahoma City, Oklahoma, on September 26, 1971, by four black males. Both the victim and witness identified in court the three co-defendants as participants. The fourth robber had not been identified and apprehended at the time of trial. During the course of the trial the court conducted an in camera examination of the two witnesses for the State and ruled that the in-court identification of the defendants was based on their recollection of the robbery and not any intervening pretrial confrontation. (Tr. 37–71). Each of the defendants took the stand and denied involvement in the robbery. The jury convicted all of the defendants. The petitioner as a subsequent offender had his punishment fixed by the jury at 40 years' imprisonment.

All defendants filed motions for new trials. The basis for petitioner's motion was an oral statement made by Rickey

Leon Green to petitioner's attorney and to his own attorney admitting his participation but exculpating Taylor and Roberts. He stated that the four who actually committed the robbery were himself, Clyde Pickard, Rickey Reed and Reginald Hays. When this information was related to the prosecutor he asked Detective Burns, Oklahoma City Police Department, who conducted the original investigation, to check out these people. It developed that Rickey Reed looked almost exactly like Eddie Taylor and after looking at his picture the two witnesses decided that they were mistaken in their identification of Taylor. (Tr. 216.) Reginald Hays fit the description of the fourth participant who had previously been unidentified. At a hearing before the court on the motions for new trial on December 20, 1971, Officer Burns testified that Pickard had been an original suspect whose name was eliminated but nevertheless in the further investigation the police had picked him up again. When he was presented to the witness Olson in a show-up, the witness did not identify him as a participant but persisted in his identification of petitioner Roberts. Burns also confirmed Pickard's alibi. (Tr. 229.) Hays was identified by Olson in a lineup as the fourth robber. (Tr. 229.) Rickey Reed had not been apprehended but the officer described him as a "look alike" for Eddie Taylor. Burns further testified at this hearing that he conducted separate pretrial lineups in which Olson and Moore had positively identified the petitioner (Tr. 234.) Howard Devine, polygraph examiner for the Oklahoma City Police Department, testified that he had administered a lie-detector test to Eddie Taylor and was satisfied that he was telling the truth concerning his innocence. In consideration of this evidence the court granted Taylor a new trial and the charge was dismissed by the State.

The court conducted another hearing on December 27, 1971, on petitioner's motion for new trial. This time he produced a Stephen Hal Moore who testified that on December 19th he had been arrested on drug charges with William Rex Moore, the robbery victim in petitioner's case, and that while in jail the said William Rex Moore had confided in him that he really could not identify the persons who had robbed him. (Tr. 254, 259, 262.) At the conclusion of this hearing the petitioner's attorney offered to have petitioner submit to a polygraph examination and the court agreed that this could be done. The matter then came on for further hearing on January 4, 1972. The court noted that it had asked Officer Devine to administer the test to petitioner but that the officer had reported to the court that petitioner would not cooperate with him and he was therefore unable to conduct the examination. The court continued:

"So to give him the benefit of the doubt, I contacted the Oklahoma Bureau of Investigation and had him— the defendant sent there yesterday for a polygraph examination which I understand has been conducted by Officer Brady." (Tr. 281.)

Frank Brady then testified that he was the polygraph examiner for the Oklahoma State Bureau of Investigation. He had been with the Bureau for five years and had conducted over 425 polygraph examinations. The witness related his interview with the petitioner and the details of his examination. It was his conclusion that the petitioner was not telling the truth about his involvement in the robbery. (Tr. 291.) The judge then denied the petitioner's motion for new trial and sentenced him in accordance with the verdict of the jury.

A direct appeal was perfected by the petitioner in the Oklahoma Court of Criminal Appeals. On September 13, 1972, the appeals court affirmed the judgment and sentence of the trial court. *Roberts v. State,* 501 P.2d 220, Okl.App. See also *Green v. State,* 501 P.2d 219, Okl.App. A Petition for Rehearing was denied October 2, 1972.

Subsequently the petitioner filed an application seeking post-conviction relief in the sentencing court. He was denied

relief without an evidentiary hearing on January 4, 1974. An appeal was perfected to the Oklahoma Court of Criminal Appeals, Case No. PC–74–65. On March 19, 1974, that court entered an Order affirming the denial of post-conviction relief.

After an unsuccessful habeas proceeding in this court in Case No. CIV–74–376–D, the petitioner returned to the Oklahoma courts. In his second application for post-conviction relief filed in the District Court of Oklahoma County on December 12, 1974, the petitioner contended that his identification in court was tainted by a suggestive pretrial confrontation and that he was further entitled to relief because Reginald Hays said the petitioner was innocent. The affidavit of Reginald Hays to this effect was attached to the application. The District Court of Oklahoma County conducted an evidentiary hearing and Reginald Hays was brought from the penitentiary to testify. Hays, however, testified that he knew nothing about the robbery and that he signed the affidavit solely for the purpose of attempting to secure the release of the petitioner from confinement. The court then denied the application on February 21, 1975. The petitioner perfected an appeal from this order to the Oklahoma Court of Criminal Appeals, Case No. PC–75–126. On March 26, 1975, the appeals court again affirmed the sentencing court.

The petitioner perhaps best summarizes his contentions in this court in his Traverse:

1. "Petitioner's trial was tainted by an impermissibly suggestive pretrial confrontation."

2. "Evidence in form of an affidavit by two fellow inmates stating that they and two others perpetrated the crime for which petitioner was convicted and sentenced, in the interest of fair play and justice petitioner's conviction, judgment and sentence should be vacated and set aside as a matter of constitutional law."

In this proceeding the petitioner attached to his petition the same affidavit of Reginald Hays dated November 1, 1974, which he had submitted to the District Court of Oklahoma County. In support of his Traverse he added the affidavit of Rickey Leon Green, dated May 5, 1975, exonerating the petitioner. With his "Supplement to Traverse" the petitioner also submits another affidavit of Reginald Hays stating that the reason he testified in the hearing before the District Court of Oklahoma County that "I knew nothing about the robbery for which Roberts was convicted and that I signed the affidavit solely for the purpose of attempting to secure the release of petitioner Roberts from confinement" was because he had been intimidated by the advice of Mr. Don Anderson, Public Defender of Oklahoma County, concerning the consequences if he testified falsely. The State agrees with petitioner that the state remedies have been exhausted.

The petitioner's allegations concerning the constitutional infirmity of his in-court identification by the two prosecution witnesses consist almost wholly of bald conclusions and he never precisely states whether he is objecting to his identification by Olson or Moore, or both. In his original petition his allegations are so vague it is unclear whether he is complaining about a lineup, preliminary hearing or other pretrial confrontation. In his "Traverse" the petitioner appears to focus on the preliminary hearing at which time he allegedly was present in jail garb.

The petitioner was identified in separate lineups by both Olson and Moore. Taylor was never put in a lineup and was not originally named in the Information. It appears, however, that Moore and Olson were present at another court appearance when coincidentally Taylor was being arraigned on another charge. They thought they recognized him as one of the robbers and told the prosecutor who added his name to the Information. See Tr. 103 and 233. Al-

though Moore at the in camera hearing and during the trial apparently confused Taylor and Roberts and indicated he had seen Taylor but not Roberts in a lineup (Tr. 53) he later admitted he had not seen Taylor in a lineup. (Tr. 103.) There can be no doubt in view of the testimony at the post-trial hearing of Officer Burns who conducted the pretrial lineups that Moore did indeed identify the petitioner at a lineup. (Tr. 234.) The record reflects that separate lineups were conducted for Green and Roberts and that the witnesses viewed them at different times. Each group was composed of five black males about the same age. There was nothing suggestive about the lineup procedures as described and the petitioner is unable to point out any way in which they were suggestive or otherwise constitutionally defective.

 The petitioner's allegations concerning his preliminary hearing do not compel a conclusion that his in-court identification at trial was tainted. A pretrial confrontation may be so unnecessarily suggestive and conducive to irreparable mistaken identification that it constitutes a denial of due process of law. *Stovall v. Denno,* 388 U.S. 293, 86 S.Ct. 1983, 16 L.Ed.2d 1014 (1967). Each case must be considered on its own facts and relief will be afforded on such grounds only if the identification procedure was so "impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification". *Simmons v. United States,* 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968). It is clear that improper suggestiveness does not alone require the exclusion of evidence. *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L. Ed.2d 401 (1972). In that case the Supreme Court recognized the rule of admissibility to be whether there is substantial likelihood of misidentification under the "totality of the circumstances." Critical factors to be evaluated in such consideration included "the opportunity of the witness to view the criminal at the time of the crime, the

witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and confrontation." 409 U.S. at 199, 93 S.Ct. at 382.

 The attack occurred in broad daylight and each witness had ample opportunity to view the participants. The incident occurred on September 26, 1971. The preliminary hearing on October 26, was not the first confrontation of the petitioner with the witnesses. The lineups were held on October 5th. Moore was positive in his identification at the time of the lineup. (Tr. 51.) A subsequent confrontation with the petitioner in jail clothing would appear to have little significance after the identification by the witnesses in the neutral setting of the lineup. Both witnesses told the court at the in camera hearing that their identification was based on the incident. Olson testified that he knew the accused because of what happened on the 26th:

> "I was robbed by them. I know them. There is no mistaken identity." (Tr. 72.)

The trial court concluded that the source of the in-court identification by the two state witnesses was the offense itself. Its adjudication is presumed to be correct. 28 U.S.C.A. § 2254. There is nothing in the totality of the circumstances to indicate a substantial likelihood of misidentification. The court's examination of the record makes it clear that the in-court identification by the witnesses had an independent origin and it can be said with certainty that these witnesses would have made the same identification of the petitioner at the time of trial if there had been no intervening pretrial confrontation at the lineup or preliminary hearing.

The petitioner finally contends that he is entitled to relief because he has the affidavits of two other inmates exculpating him. He places principal reliance upon *Anderson v. United States,* 443 F.

2d 1226 (CA10 1971). There, in a proceeding pursuant to 28 U.S.C. § 2255, the petitioner submitted an affidavit by a fellow inmate confessing his guilt of the offense for which petitioner had been imprisoned. The trial court summarily rejected the petition on the basis that the confession could afford no grounds for relief. The sole issue decided by the appeals court was that the conclusory summary procedure was not a proper method for rejection of the petition. It remanded the case for the purpose of determining whether the confession was true. It, however, imposed no requirement for an evidentiary hearing, pointing out:

> "That court is not, however, bound to grant an evidentiary hearing upon a frivolous or incredible allegation of newly discovered evidence." 443 F.2d at 1227.

■ This case is distinguishable for here the proceedings are governed by 28 U.S.C. § 2254. The state courts have already determined factually that the statments of Green and Hays clearing the petitioner are not true. Green's statement was one of the bases for petitioner's motion for new trial. The trial court conducted hearings at that time. Green refused to repeat his statements under oath in court. Nevertheless, the case was reinvestigated and the petitioner was given the opportunity to take a polygraph examination. The results only confirmed the petitioner's guilt and the court obviously disbelieved the claim of Green, an admitted perjurer, that the petitioner was innocent.

Similarly, in petitioner's last post conviction proceeding the state district court brought back Reginald Hays to tell his story. When placed under oath and given the opportunity to do so, he repudiated his affidavit and admitted he was only trying to help the petitioner. Now petitioner and Hays claim that Hays was discouraged from testifying to the truth about petitioner because the public defender informed him of the possible consequences for lying. This is not a situation where the trial judge made threatening remarks and the witness refused to testify. Cf. *Webb v. Texas*, 409 U.S. 95, 93 S.Ct. 351, 34 L.Ed.2d 330 (1972). Hays did not refuse to testify. He either perjured himself before the Oklahoma Court or now intends to perjure himself in this court if permitted to testify. Under the circumstances there is no basis for this court to find that the state court proceeding was unfair and inadequate to develop the facts, or that the court's determination that Hays' affidavit exculpating petitioner was false or unreliable, is not supported by the record.

■■ In review, the petitioner's basic claim is that he was the victim of mistaken identity. The Oklahoma courts have been very solicitous to determine that an innocent man was not convicted. At the trial, in the hearings on his motions for new trial, and in the post-conviction proceeding, the petitioner has been afforded every opportunity to present his case. His story and any proof in support have been deemed unbelievable by the jury, the trial judge, the appeals court and the post-conviction judges. It is not the function of this court to substitute its judgment for that of the jury or the Oklahoma courts on the record here presented. This court is satisfied that petitioner's constitutional rights have not been infringed and due process has been fully accorded to him. After an independent examination of the complete record the court finds factual and legal support for the adjudication of the Oklahoma courts. See *Maxwell v. Turner*, 411 F.2d 805 (CA10 1969). The presumption of correctness which attaches to these proceedings in the state court is not dissipated and therefore no evidentiary hearing is required in this court. *Maes v. Patterson*, 401 F.2d 200 (CA10 1968).

Accordingly, the Petition for Writ of Habeas Corpus will be denied.

It is so ordered.